E-FILED
Friday, 22 May, 2026 10:41:57 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

**JARMIAH JOHNSON and BRELYN PHILLIPS,** individually, and on behalf of others similarly situated,

Plaintiffs,

**vs.**

**AFNI, INC.**,
An Illinois Corporation,

Defendant.

Case No. 26-cv-1215

Hon.:

Mag.:

---

**COLLECTIVE AND CLASS ACTION**
**COMPLAINT AND JURY DEMAND**

Plaintiffs, JARMIAH JOHNSON and BRELYN PHILLIPS (collectively "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby brings this Class/Collective Action Complaint against Defendant AFNI, INC. ("Afni" or "Defendant"), and states as follows:

## INTRODUCTION

1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.;* the North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.1, *et.seq.*; and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2. Defendant Afni is a corporation that assists businesses by creating efficient solutions for the businesses' obstacles.

3. According to its website, Defendant utilizes "the latest tools and techniques" and

optimizes "our resources, processes, and investments" to obtain the outcomes their clients require "to stay ahead of the curve". [1]

4. To provide this quality of service, Defendant employs remote Inbound Service Agents (referred to herein as "CSRs") that provide over the phone assistance to Defendant's partners and clients from their home offices.

5. Defendant uses a wide variety of internal job titles to refer to its CSRs. For example, Plaintiffs' job title was "Inbound Service Agent" and "Customer Service Representative". Regardless of the CSR's specific job title, all of Defendant's CSRs are similarly situated in regard to the wage and hour violations alleged herein. To that end, it is Plaintiffs' intention that the class definition below include all CSRs.

6. The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry. *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

7. One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.* at p. 2.

8. More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.*

[1] *See* https://afni.com/who-we-are (last accessed on 5/19/2026).

9. Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

10. In this case, Defendant encouraged CSRs to log their time based upon their scheduled hours, rather than the actual time spent working.

11. Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

12. Despite routinely scheduling CSRs for forty (40) hours in a week, Defendant required all CSRs to obtain advanced approval from Defendant before reporting any overtime hours on their timecards.

13. Defendant approved or rejected all of the CSRs' timecards.

14. Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

15. This policy results in CSRs not being paid for all time worked, including overtime.

16. Prior to working their first shift, CSRs are provided with an Afni laptop computer and necessary equipment.

17. The CSRs cannot perform their primary job duties without the Afni computer.

18. In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone systems.

19. Defendant provides the CSRs with access to its computer networks, software programs, applications, and phone systems to perform their primary job duties.

20. The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSR's work, and they cannot perform their jobs

effectively without them.

21. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

22. Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

23. Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

24. Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work but did not.

25. Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

26. Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

27. This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

28. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form

part of the same case or controversy under Article III of the United States Constitution.

29. This Court has jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

30. This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

31. Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

32. At all times relevant, Defendant operated and continues to operate in two (2) or more states simultaneously.

33. Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of interstate phone lines and other interstate communications in the performance of their job duties.

34. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

35. This Court has personal jurisdiction over Defendant because it conducts business within the state of Illinois, is headquartered in Bloomington, Illinois, was incorporated in Bloomington, Illinois, is registered with the Illinois Secretary of State and employs individuals within the state of Illinois.

36. This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Illinois, has

established minimum contacts sufficient to confer jurisdiction over it, and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

**VENUE**

37. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and Defendant was incorporated in this District.

**PARTIES**

38. Plaintiff JARMIAH JOHNSON ("Plaintiff Johnson") is a North Carolina resident who worked for Defendant as a remote CSR in North Carolina within the last two years.

39. Defendant paid Plaintiff Johnson for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $14.50 per hour.

40. Plaintiff Johnson signed a consent to join this collective action lawsuit. *Exhibit 1*, Johnson Consent to Join.

41. Plaintiff BRELYN PHILLIPS ("Plaintiff Phillips") is a Texas resident who worked for Defendant as a remote CSR in Texas within the last two years.

42. Defendant paid Plaintiff Phillips for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $14.50 per hour.

43. Plaintiff Phillips signed a consent to join this collective action lawsuit. *Exhibit 2*, Phillips Consent to Join.

44. Defendant Afni was incorporated in Bloomington, Illinois.

**GENERAL ALLEGATIONS**

45. Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices

within the last two (2) years.

46. Upon hire, Defendant provides CSRs with a laptop computer and other equipment to perform their job duties.

47. Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in Defendant's system; (d) reading emails daily with work instructions; and (e) securely logging out of the computer software programs and applications and the phones and shutting down their computers.

48. Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

49. Defendant routinely schedules CSRs to work forty (40) hours in a week, expects them to work their full schedule, but prohibits them from reporting any overtime hours without obtaining advance approval from Defendant's managers.

50. These schedules result in CSRs routinely working unpaid overtime on a weekly basis.

51. Indeed, throughout their employments with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including unpaid overtime, as part of their role as CSRs.

52. At all relevant times, Defendant controlled the CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

53. Defendant was also responsible for providing the tools, the initial training, and

continuing education of its CSRs' in their role as CSRs.

54. Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

55. These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

56. Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

57. Defendant instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can log into Defendant's phone system and begin taking and making phone calls.

58. Defendant furthermore enforces its policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSR's shift, and critically, before they clock in, through various performance metrics and schedule adherence policies.

59. More specifically, being clocked in but unavailable to take calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

60. Defendant instructed and expected CSRs to be call-ready the moment their scheduled shift began.

61. Defendant created the CSRs' work schedule and directly supervised the day-to-day performance of the CSRs' job duties.

62. All CSRs were required to comply with all of Defendant's employment policies, including, but not limited to: performance, schedule adherence, and attendance policies.

63. Failing to accurately account and pay for all of the time actually worked by

employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

64. Because CSRs are prohibited from including (or pressured not to include) all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

65. Additionally, Defendant regularly schedules and requires CSRs to work for forty hours per week, but, at the same time, prohibits them from recording overtime hours without advanced approval from management.

66. This policy likewise results in CSRs not being paid for all overtime hours worked.

67. Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

68. In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than fourteen (14) minutes per day of work performed during pre- and post-shift time and when returning from their lunch periods.

69. This time could easily be recorded, accounted for and paid, but Defendant chose not to record or credit such time as time worked.

70. Furthermore, Defendant made each CSR contractually binding promises to pay them at an agreed upon hourly rate for all hours worked.

71. For example, at the onset of her employment, on June 16, 2025, Plaintiff Johnson received an email titled "Welcome to Afni!" with an attached letter that stated, "We are excited to have you join us as an Afni Inbound Service Agents […] The consolidated hourly rate for this role is $14.50 per hour". The letter confirms the terms of her employment and notifies Plaintiff Johnson that "offer acceptance acknowledges [her] understanding.".

72. As requested, Plaintiff Johnson confirmed her acceptance of the offer from Defendant.

73. Following the onset of their respective employments, and to further evidence the contract between Plaintiffs and Defendant to pay for all hours worked at $14.50 per hour, Plaintiffs respectively completed Defendant's mandatory training, completed a background check, performed the job duties of CSRs for Defendant, and submitted their timecards to Defendant for approval.

74. However, Defendant did not honor the promise to pay Plaintiffs at the agreed upon hourly rate for the services provided because Defendant failed to compensate them for all hours worked at the promised hourly rate.

75. All CSRs received similar offers, promises, and documents directly from Defendant that outlined the duties to be performed as a CSR and the compensation they would receive.

### A. <u>Pre-Shift Off-the-Clock Work</u>

76. In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

77. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

78. The pre-shift startup and login process takes substantial time on a daily basis with said time averaging ten (10) to fifteen (15) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

79. This process entails first turning on their computers and waiting for Windows to load, then logging-into the computer desktop.

80. Next the CSRs must load, log-in, and then connect to Defendant's virtual private network (VPN) using a multi-factor authentication process that requires them to requests a code. Plaintiffs were also required to access a separate remote network, with a separate muti-factor authentication process, to access the programs necessary to complete work on the project to which Plaintiffs were assigned.

81. Upon accessing the VPN, CSRs must open, load, and log-into several essential web-based programs that include, but are not limited to: Verizon related programs, One Credit, and Cisco Jabber.

82. Finally, once getting themselves call-ready, the CSRs open, load, and log-into UKG – Defendant's timekeeping program.

83. The aforementioned computer bootup tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications (with a minor variation between projects) up and running on their computers in order to be prepared to accept incoming calls.

84. Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

85. Instead, Defendant maintains attendance policies that require them to be call-ready at the start of their scheduled shift and at the moment they clock-in.

86. As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than ten (10) minutes per day of work performed in connection with the above pre-shift work activities.

### B. <u>Meal-Period Off-the-Clock Work</u>

87. Similarly, upon returning from their lunches, CSRs are regularly required to go through part (and sometimes all) of the aforementioned bootup process during their unpaid

lunches.

88. Much like the start of the shift, Defendant expects CSRs to be available to take calls the minute their unpaid lunch period ends.

89. Defendant provides their CSRs with one (1) sixty (60) minute unpaid lunch break per shift.

90. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

91. Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

92. On most days, CSRs spend another three (3) to five (5) minutes performing this work during their unpaid meal breaks.

93. Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

### C. Post-Shift Off-the-Clock Work

94. Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required at the end of each shift to log out of the essential computer software programs and

applications utilized during their shifts.

95. The shutdown and logout process, along with post-shift claims processing, requires another one (1) minute of off the clock work per shift.

96. Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last call.

97. Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

98. The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

### D. Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies

99. An example of specific workweeks where Defendant failed to pay Plaintiff Phillips all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 12/14/2025-12/27/2025**

- Plaintiff was paid at a rate of $14.50 per hour for the at least 40 regular hours worked in a single workweek within this pay period.
- With unpaid pre-shift, meal-period, and post-shift time at fourteen (14) minutes per shift, at five shifts per week, Plaintiff Phillips should have been paid an additional seventy (70) minutes at her overtime rate of $21.75 per hour during the workweek.

100. The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

### E. Defendant Benefitted from the Uncompensated Off-the-Clock Work

101. At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated CSRs in connection with the above-described pre-shift, meal-period, and post-shift off-the-clock work activities performed by CSRs.

102. At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

103. At all relevant times, Defendant was able to track the amount of time CSRs spent in connection with the pre-shift, meal-period, and post-shift activities.

104. Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

105. At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

106. At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period, and post-shift off-the-clock work.

107. Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts and *before* returning from lunch, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

108. At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period, and post-shift activities they performed.

109. Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices regularly deprived them of overtime pay in many workweeks.

110. Defendant knew or should have known that the time spent by CSRs in connection

with the pre-shift, meal-period and post-shift activities was compensable under the law.

111. In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

112. Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

113. Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

114. Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

115. Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

116. Excluded from the proposed FLSA Collective are Defendant's executives and administrative and professional employees, including computer professionals and outside salespersons.

117. Consistent with Defendant's policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they

worked beyond forty (40) hours in a workweek.

118. Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

119. As part of its regular business practices, Defendant intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay its employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

b. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

120. Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

121. Defendant's unlawful conduct has been widespread, repeated and consistent.

122. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

123. The employees on behalf of whom Plaintiffs brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

124. The employment relationships between Defendant and every proposed FLSA

Collective member are the same and differ only by name, location and rate of pay.

125. The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time owed to each employee, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

126. Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

127. Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b) as soon as is practicable.

128. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

129. Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

130. The precise identity and number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 CLASS ACTION ALLEGATIONS

131. Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on their own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.***

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend this definition as necessary.

132. Plaintiffs' common law Rule 23 allegations are bought to the extent no state statutes exist for a particular CSR to recover unpaid straight time wages.

133. The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are thousands of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

134. There is a well-defined community of interest among members of the Rule 23 Class and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions, include, but are not limited to, the following:

a. Whether the pre-shift work that Rule 23 Class members perform on start-up/log-in activities prior to "clocking in" for each shift was compensable time;

b. Whether the post-shift work that Rule 23 Class members perform on log-out activities following "clocking out" for each shift was compensable time;

c. Whether the time that Rule 23 Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in was compensable time;

d. Whether Defendant's failure to pay the Rule 23 Class members for this pre-, post-, and mid-shift time at their agreed upon rate constitutes a breach of contract; and

e. If it is determined that no contract existed to pay for the alleged unpaid work, whether Defendant was unjustly enriched by not paying for the work performed by the CSRs.

135. Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other members Rule 23 Class suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiffs' claims arise from the same pay

policies, practices, promises, and course of conduct as all other members of the Rule 23 Class's claims and their legal theories are based on the same legal theories as all other members of the Rule 23 Class.

136. Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

137. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for members of the Rule 23 Class to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

138. This case will be manageable as a Rule 23 class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

139. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

140. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as

a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS**

141. Plaintiff Johnson brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in North Carolina at any time during the applicable statutory period*.**

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff Johnson reserves the right to amend the putative class definition if necessary.

142. The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be impractical.

143. Plaintiff Johnson reasonably estimates that there are hundreds of Rule 23 North Carolina members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

144. There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class.

145. These common legal and factual questions include, but are not limited to, the following:

a. Whether the pre-, mid-, and post-shift time Rule 23 North Carolina Class members spend on start-up/log-in activities, mid-shift activities, and shut-down activities off the clock each shift is compensable time;

b. Whether Defendant failed to pay all "wages" owed to the Rule 23 North Carolina Class, as contemplated by NCWHA;

c. Whether Defendant unlawfully withheld or diverted wages from the Rule 23 North Carolina Class in violation of the NCWHA;

d. Whether Defendant properly furnished each Rule 23 North Carolina

Class Member with an itemized statement showing the gross pay and deductions;

e. Whether Defendant failed to timely pay all wages owed to the Rule 23 North Carolina Class, as required by NCWHA; and

f. Whether the Rule 23 North Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, as well as time reported by the Rule 23 North Carolina Class but otherwise not paid, and if so, the appropriate amount thereof.

146. Plaintiff Johnson's claims are typical of those of the Rule 23 North Carolina Class in that she and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

147. Plaintiff Johnson's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

148. Plaintiff Johnson will fully and adequately protect the interests of the Rule 23 North Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of North Carolina wage and hour class actions.

149. Neither Plaintiff Johnson nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

150. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

151. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

152. This case will be manageable as a Rule 23 Class action. Plaintiff Johnson and her

counsel know of no unusual difficulties in this case and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

153. Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

154. Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

155. Because Defendant continues to refuse to pay its workers for each and every hour worked, by failing to maintain and account for accurate recordkeeping, the North Carolina Class seeks an order from this Court enjoining Defendant from its continued violation of North Carolina law and for an award of civil penalties.

156. Defendant has acted and refused to act on grounds that apply generally to the Class, and because declaratory relief is appropriate in the case with respect to the North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## (29 U.S.C. § 216(b) Collective Action)
## Violation of the FLSA, 29 U.S.C. § 201, *et seq.*
## Failure to Pay Overtime Wages

157. Plaintiffs re-allege and incorporate all previous paragraphs herein.

158. At all times relevant to this action, Defendant was engaged in interstate commerce,

or in the production of goods for commerce, as defined by the FLSA.

159. At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

160. Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

161. Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

162. At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

163. At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than fourteen (14) minutes per day of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

164. In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

165. Likewise, in any week in which inclusion of the uncompensated off-the-clock work time would have brought Plaintiffs and other FLSA Collective members over forty (40) hours, any uncompensated regular rate time is compensable at their regular rate of pay for such workweek. [2]

---

[2] Pursuant to 29 CFR § 778.315, "[p]ayment for all hours worked in overtime workweek is

166. Defendant's violations of the FLSA were knowing and willful.

167. Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

168. Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

169. The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Class Action)**
**Breach of Contract**

170. Plaintiffs reallege and incorporate all previous paragraphs herein.

171. The allegations in this Count II do not seek to recover overtime wages, but instead, seeks to recover non-overtime wages in non-overtime workweeks in which Plaintiffs and the Rule 23 Class members worked less than 40 hours in a week.

172. At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed on Defendant's behalf.

173. Defendant's contractual promises to pay Plaintiffs and each Rule 23 Class member's applicable hourly rate is evidenced by, among other things, the position descriptions, onboarding correspondence, and offer letters issued to Plaintiffs and the Rule 23 Class on

---

required…This extra compensation for the excess hours of overtime work under the Act cannot be said to have been paid to an employee unless all the straight time compensation due him for the nonovertime hours under his contract (express or implied) or under any applicable statute has been paid."

Defendant's behalf.

174. Upon information and belief, each Rule 23 Class member, including Plaintiffs, were promised an hourly rate of approximately $14.50 to $20.00 per hour.

175. Plaintiffs and every other Rule 23 Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift, post-shift, and meal period activities, described herein.

176. By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Class.

177. To the extent there is no state law remedy available, Plaintiffs and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

178. As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

**COUNT III**
**(Rule 23 Class Action)**
**Unjust Enrichment**

179. Plaintiffs re-allege and incorporate all previous paragraphs herein, but does not re-allege or incorporate any paragraph or statement that alleges or infers that a contract existed

between the Plaintiffs and Defendant or Rule 23 Class members and Defendant.

180. This Count is pled in the alternative to Count II, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

181. This Count applies only to workweeks were the FLSA's overtime protections are inapplicable (less than 40 hours).

182. At all times relevant to this action, Defendant promised Plaintiffs and every other member of the Rule 23 Class a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the members of the Rule 23 Class performed for the benefit of Defendant.

183. Plaintiffs and every other member of the Rule 23 Class relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

184. By not paying Plaintiffs and every other member of the Rule 23 Class the agreed upon hourly wage for the off-the-clock work they performed each shift Defendant was unjustly enriched.

185. Plaintiffs and the members of the Rule 23 Class performed off-the-clock work tasks at the request of and without objection by Defendant.

186. Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every member of the Rule 23 Class and enjoyed the benefits derived therefrom.

187. Upon information and belief, Defendant used the monies owed to Plaintiffs and every other member of the Rule 23 Class to finance its various business ventures or pay its equity owners.

188. Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the members of the Rule 23 Class performed for Defendant's benefit,

without having compensated Plaintiffs and the Rule 23 Class for the same.

189. Plaintiffs and the Rule 23 Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

190. As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other member of the Rule 23 Class suffered damages, including but not limited to, loss of wages.

**COUNT IV**
**(Rule 23 North Carolina Class Action)**
**North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.1, *et.seq.*:**

191. Plaintiff Johnson re-alleges and incorporates all previous paragraphs herein.

192. At all relevant times, Defendant qualified as an "employer" and Plaintiff qualified as an "employee" within the meaning of the North Carolina Wage and Hour Act (NCWHA), N.C.G.S.A. § 95-25.2.

193. "Wages" means "[c]ompensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation, and the reasonable cost as determined by the Commissioner of furnishing employees with board, lodging, or other facilities. For the purposes of G.S. 95-25.6 through G.S. 95-25.13 "wage" includes sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C.G.S.A. § 95-25.2(16).

194. Pursuant to North Carolina Act, N.C.G.S.A. § 95-25.1, *et.seq.*, it is unlawful for an employer to suffer or permit an employee to work without paying promised and earned wages for

all hours worked.

195. Pursuant to North Carolina Act, N.C.G.S.A. § 95-25.6, Defendant was required to pay Plaintiff Johnson and all other Rule 23 North Carolina Class members all wages, when due, for all hours of work at their regular rate on their regular pay day.

196. Defendant did not pay Plaintiff Johnson and all other Rule 23 North Carolina Class members all wages due to them for non-overtime hours as a result of the illegal work off-the-clock.

197. At all times relevant, Defendant had knowledge of all work completed by Plaintiff Johnson and all other Rule 23 North Carolina Class members and Defendant permitted them to perform such work and did not pay them the promised wages for hours worked.

198. Accordingly, Plaintiff Johnson and all other Rule 23 North Carolina Class members are entitled to receive all compensation of non-overtime "wages" due and owing to them.

199. Defendant willfully failed to pay Plaintiff Johnson and all other Rule 23 North Carolina Class members all "wages," and withheld such wages as defined in §§ 95-25.1 and 95.25.8 of the North Carolina Act for all work performed, according to the law.

200. Defendant has withheld wages of Plaintiff Johnson and all other Rule 23 North Carolina Class members without providing advance notice of such amounts and absent any lawfully sufficient reason for such conduct. N.C.G.S.A. §§ 95-25.8 and 95-25.13.

201. As a direct and proximate result of Defendant's willful conduct, Plaintiff Johnson and all other Rule 23 North Carolina Class members have suffered substantial losses and are entitled to recover their unpaid wages, liquidated damages, and attorneys' fees and costs pursuant to North Carolina Wage and Hour Act, N.C.G.S.A. § 95-25.22.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective,

on behalf of the Rule 23 Class, and on behalf of the Rule 23 North Carolina Class request judgment as follows:

a. Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b. Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust enrichment (Counts II-III);

c. Certifying this action as a class action (for the North Carolina Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claim (Count IV);

d. Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action members and the members of the Rule 23 Classes, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e. Designating Plaintiffs as the representatives of the FLSA collective action and the Rule 23 Classes, for their respective states, and undersigned counsel as Class counsel for the same;

f. Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

g. Declaring Defendant's violation of the FLSA was willful;

h. Declaring Defendant breached its contractual obligations as set forth herein or in the alternative was unjustly enriched by the unpaid work alleged herein;

i. Declaring Defendant violated North Carolina law as cited herein;

j. Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class and the Rule 23 Classes the full amount of damages, liquidated damages, and treble damages available by law;

k. Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

l. Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

m. Awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 22, 2026

Respectfully Submitted,

/s/ Charles R. Ash, IV________
**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (admitted)
43000 W. Nine Mile Rd., Suite 301
Novi, MI 48375
(833) NWHLPAY or (833) 694-5729
cash@nationalwagelaw.com

/s/ Oscar A. Rodriguez_______
**RODRIGUEZ LAW PLC**
Oscar A. Rodriguez (P73413) (admitted)
402 W. Liberty St.
Ann Arbor, MI 48103
Phone: (734) 415-9011
oscar@orodlaw.com

*Counsel for Plaintiffs and the Putative Collective/Class Members*